IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Shay Hewitt, | ) | |
| | ) | C/A No. 6:12-3403-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| D.P. Garrison, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court on a motion for summary judgment filed by Defendant D.P. Garrison's ("Garrison"). (ECF No. 27). Plaintiff Shay Hewitt ("Hewitt") has filed a response opposing the motion (ECF No. 67), and Hewitt has filed a reply (ECF No. 36). For the reasons below, the motion is granted.

**I. Background/Procedural History**

Hewitt previously owned the Art Boutique, a small retail clothing store in Greenville, South Carolina. In early 2008, Hewitt and Krista Cogdill ("Cogdill") were involved in a business arrangement which ended in 2009 amid allegations that Cogdill stole corporate images, a marketing plan, and sponsors, and made slanderous statements to Hewitt's sponsors and vendors in an effort to compete with her. Hewitt alleges Cogdill began to harass her and she began receiving anonymous threatening texts and emails. She also alleges that on April 29, 20009, Cogdill threatened her at her place of business, and Cogdill was cited with trespassing.

On May 11, 2009, Cogdill filed a civil action against Hewitt alleging slander. Hewitt alleges the number of threatening texts and emails she received increased, and on May 15, 2009, she filed a report with the Greenville County Sheriff's Office. Hewitt alleges the texts and emails continued over the summer, and Hewitt hired a private investigator to assist her in the civil action by researching Cogdill's background. The private investigator discovered criminal charges and public records regarding civil litigation with a former employer and a custody dispute. Hewitt

published these public records to many of the Art Boutique's customers, vendors, and sponsors.

Subsequently, on September 14, 009, Cogdill meet with Detective Garrison to file an incident report for harassment and stalking. On October 1, 2009, Cogdill met with Garrison a second time, and signed an affidavit regarding the incidents. Garrison began a criminal investigation, and on October 2, 2009, Garrison sought an arrest warrant charging Hewitt with first degree harassment. Based upon Garrison's affidavit, Judge Joyce Heaton issued an arrest warrant. Garrison also sought a search warrant which was issued and executed on October 5, 2009.

Hewitt was arrested on October 5, 2009, and after a preliminary hearing, Judge Matthew Hawley found probable cause existed to charge Hewitt with first degree harassment, and the case was sent to the grand jury. Eventually, an assistant solicitor, in his prosecutorial discretion, dismissed the charge on June 15, 2010. In this action, Hewitt alleges claims for violations of the Fourth, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. §1983 and a common law claim of malicious prosecution.

## II. Discussion

Garrison moves for summary judgment on several grounds contending: 1) that he had probable cause to pursue the harassment charge against Hewitt; 2) he is entitled to qualified immunity; 3) Hewitt has failed to establish that he acted with malice; and 4) under the South Carolina Tort Claims Act, S.C. Code Ann. § 15-78-10, et seq. ("SCTCA"), he is entitled to immunity and Hewitt's claims are barred by the statute of limitations.

**A. Probable Cause**

As noted above, Hewitt alleges claims for violations of the Fourth, Fifth, and Fourteenth Amendments pursuant to 42 U.S.C. §1983 and a common law claim of malicious prosecution.[1]

---

[1]To the extent Hewitt contends that her Fifth and Fourteenth Amendment rights were violated, the court finds that these claims fail. "Where a particular Amendment provides an

2

Plaintiff appears to plead both a claim for false arrest and malicious prosecution, pursuant to 42 U.S.C. § 1983, and a common law state claim of malicious prosecution. However, a false arrest claim cannot be pursued when a person has been arrested based on a facially valid warrant. *Porterfield v. Lott*, 156 F.3d 563, 568 (4th Cir. 1998) ("a claim for false arrest may be considered only when no arrest warrant has been obtained"). *See Dorn v. Town of Prosperity*, 375 F.App'x 284, 286 (4th Cir. 2010) ("The distinction between malicious prosecution and false arrest . . . is whether the arrest was made pursuant to a warrant."). Here, a magistrate issued a facially valid warrant for Hewitt's arrest. Accordingly, Garrison is entitled to summary judgment on Hewitt's claim for false arrest.

In any event, Hewitt's allegations against Garrison sound more in malicious prosecution, as she claims that Garrison failed to conduct a proper and thorough investigation and the charges against her were later dismissed. *See Brooks v. City of Winston-Salem*, 85 F.3d 178, 182 (4th Cir. 1996) ("[A]llegations that an arrest made pursuant to a warrant was not supported by probable cause, or claims seeking damages for the period after legal process issued, are analogous to the common-law tort of malicious prosecution."). Whether an independent cause of action for malicious prosecution under § 1983 even exists is a question that has not been definitively answered. *See, e.g., Wallace v. Kato,* 549 U.S. 384, 390 n.2 (2007) ("We have never explored the contours of a Fourth Amendment malicious-prosecution suit under § 1983, and we do not do so

---

explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (internal citation and quotation marks omitted). As the Fourth Amendment provides an explicit textual source for Hewitt's § 1983 malicious prosecution claims, the Fourteenth Amendment does not provide an alternative basis for her claims. Additionally, as to Hewitt's claims alleging a violation of her Fifth Amendment rights, an individual's Fifth Amendment right against self-incrimination is violated "only if one has been compelled to be a witness against himself in a criminal case" *Chavez v. Martinez*, 538 U.S. 760, 770 (2003) (plurality opinion), or "allege[ed] [a] *trial* action that violated [her] Fifth Amendment rights." *Burrell v. Virginia,* 395 F.3d 508, 513 (4th Cir. 2005) (emphasis in original). Hewitt has not alleged such a claim.

3

here.") (citation omitted); *Snider v. Seung Lee*, 584 F.3d 193, 199 (4th Cir. 2009)(noting that "[w]hile it is not entirely clear whether the Constitution recognizes a separate constitutional right to be free from malicious prosecution, if there is such a right, the plaintiff must demonstrate both an unreasonable seizure and a favorable termination of the criminal proceeding flowing from the seizure.").

Accordingly, what has been sometimes "termed a 'malicious prosecution' claim . . . is simply a claim founded on a Fourth Amendment seizure that incorporates the elements of the analogous common law tort of malicious prosecution." *Snider*, 584 F.3d 199 (internal quotation marks omitted). To state such a claim, a plaintiff must allege that the defendants: 1) caused 2) seizure of the plaintiff pursuant to legal process unsupported by probable cause and 3) criminal proceedings terminated in his favor. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir.2012) (citation omitted).

The favorable termination "element is satisfied where a prior criminal case against the plaintiff has been disposed of in a way that indicates the plaintiff[']s innocence." *Snider*, 584 F.3d at 202 (Stamp, J. concurring) (*citing Murphy v. Lynn*, 118 F.3d 938, 948 (2d Cir. 1997) ("Where the prosecution did not result in an acquittal, it is deemed to have ended in favor of the accused, for these purposes, only when its final disposition is such as to indicate the innocence of the accused.")). Courts have held that a simple, unexplained nolle prosequi, dismissal, or disposal of pending state charges that results in the dismissal of the charges for reasons other than the defendant's innocence does not satisfy the favorable termination requirement. *See Jackson v. Gable*, C/A No. 0:05-2591-HFF-BM, 2006 WL 1487047, at *6 (D.S.C. May 25, 2006); *see also Nicholas v. Wal-Mart Stores, Inc.*, 33 F. App'x 61, 64–65 (D.S.C. 2002) (state-law based malicious prosecution; favorable termination requirement). While the charge against Hewitt was dismissed based upon prosecutorial discretion and the Greenville County Thirteenth Judicial Circuit Public Index confirms that the charge was dismissed per SCRCP Rule 41(a), there is no

4

evidence to show that the charge was dismissed based upon Hewitt's innocence. However, even assuming Hewitt could show that the underlying criminal proceedings terminated in her favor, the court finds the prosecution was supported by probable cause.

Where, as here, the plaintiff alleges a Fourth Amendment violation which involves an arrest pursuant to a warrant, the fact that a neutral magistrate issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner in performing their investigation. *United States v. Leon*, 468 U.S. 897, 922-923 (1984). Nonetheless, the fact that a neutral magistrate has issued a warrant authorizing the seizure does not end the inquiry into objective reasonableness. A facially valid search warrant will be found to violate the Fourth Amendment if it contains false or misleading statements that are "necessary to the finding of probable cause." *Wilkes v. Young*, 28 F.3d 1362, 1365 (4th Cir. 1994) (*quoting Franks v. Delaware*, 438 U.S. 154, 156 (1978)). The party challenging the warrant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Franks,* 438 U.S. at 156.

"For probable cause to exist, there need only be enough evidence to warrant the belief of a reasonable officer that an offense has been or is being committed; evidence sufficient to convict is not required." *Brown v. Gilmore*, 278 F.3d 362, 367 (4th Cir. 2002). To determine the existence of probable cause, courts must examine "the totality of the circumstances known to the officer" leading up to the time of arrest. *Id*. The court must "then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (citations omitted). *See also United States v. Muriel*, 418 F.3d 720, 724 (7th Cir. 2005) (holding courts "need only inquire whether the officer had probable cause to believe that a traffic violation occurred, not whether [the driver] actually was tailgating."); *United States v. Smith*, 80 F.3d 215, 219 (7th Cir. 1996) ("whether [the motorist] would have been convicted of a violation in a traffic court" is not the issue).

5

Thus, the issue is not whether Hewitt committed the offense - it is whether Garrison reasonably believed that Hewitt was harassing Cogdill. Thus, Hewitt's argument that she did not actually commit the offense of first degree harassment cannot establish that Garrison lacked probable cause. Rather, Hewitt must demonstrate that Garrison's belief that a violation occurred was not only incorrect, but was objectively unreasonable. *See Cullins v. Sumter City Police Dep't*, C/A No. 8:10-cv-264 RMG, 2011 WL 291249 (D.S.C. Jan. 27, 2011).

Hewitt was charged with first degree harassment. The elements of that crime must be examined to determine whether probable cause existed in this instance. S.C. Code Ann. § 16-3-1700 provides, in pertinent part:

> (A) "Harassment in the first degree" means a pattern of intentional, substantial, and unreasonable intrusion into the private life of a targeted person that serves no legitimate purpose and causes the person and would cause a reasonable person in his position to suffer mental or emotional distress. Harassment in the first degree may include, but is not limited to:
>
> (1) following the targeted person as he moves from location to location;
>
> (2) visual or physical contact that is initiated, maintained, or repeated after a person has been provided oral or written notice that the contact is unwanted or after the victim has filed an incident report with a law enforcement agency;
>
> (3) surveillance of or the maintenance of a presence near the targeted person's:
>
>   (a) residence;
>
>   (b) place of work;
>
>   (c) school; or
>
>   (d) another place regularly occupied or visited by the targeted person; and
>
> (4) vandalism and property damage
>
> . . .
>
> (G) This section does not apply to words or conduct protected by the Constitution

6

>of this State or the United States, a law enforcement officer or a process server performing official duties, or a licensed private investigator performing services or an investigation as described in detail in a contract signed by the client and the private investigator pursuant to Section 40-18-70.

S.C. Code Ann. § 16-3-1700.

In his affidavit, Garrison sets forth the events leading up to his seeking a warrant for Hewitt: On September 14, 2009, he met with Cogdill, Liz Dailey, and Moody Behery. Cogdill detailed her relation ship with Hewitt and informed Garrison that since the civil suit between them began, Hewitt had engaged in a series of actions that made Cogdill fearful for her safety and life. (ECF No. 28-1, Garrison Aff. ¶¶ 14, 15, 17). Cogdill informed him that Hewitt had been sending emails to Cogdill's friends and associates in an attempt to discredit, defame, and intimidate her and others from associating with Cogdill. (Garrison Aff. ¶ 18). These emails included attachments of court documents from a civil case between Cogdill and a former employer and excerpts from a previous family court custody dispute involving Cogdill. (Garrison Aff . ¶ 19). Cogdill also told Garrison that Hewitt had setup a Facebook page and a Facebook Group to further disseminate the information contained in emails. (Garrison Aff. ¶ 20). Cogdill gave Garrison copies of the emails and screen shots of the Facebook pages. (Garrison Aff. ¶ 25). Cogdill also told Garrison that Hewitt had spoken to several of Cogdill's business associates and threatened them if they continued to do business or otherwise associate with Cogdill. Moody recounted an incident at a local downtown event venue, Zen, where Hewitt brandished a police baton and made threatening or intimidating comments in reference to Cogdill. (Garrison Aff. ¶ 22).

Garrison subpoenaed records and determined that in all but five instances, the emails came from an IP address assigned to Hewitt. (Garrison Aff. ¶ 29). He further reviewed the emails and Facebook posts, and determined that they alleged that Cogdill lost custody of her child

7

due to neglect and substance abuse, Cogdill was the subject of an investigation by the Secretary of State's Office, and referred to expunged criminal charges. *Id*. Garrison states he obtained numerous sworn written statements from Cogdill, Behery, Christine Price, Jennifer Johnson Helms, Steve Baker, and Jennifer Romanstine, substantiating the allegations against Hewitt. (Garrison Aff. ¶ 29 and Ex. C). He also conducted interviews with Helms, Baker, and Romanstine, further substantiating the allegations against Hewitt. (Garrison Aff. ¶ 29). Based upon this information, Garrison determined he had probable cause to seek a warrant charging Hewitt with harassment. (Garrison Aff. ¶ 30).[2]

Hewitt contends that the information which was being sent in the emails was public information sent to business associates and would not constitute an unreasonble intrusion into the private life of Cogdill. Additionally, Hewitt contends that Garrison failed to consider that there was a legitimate purpose for Hewitt's actions - that she was defending herself in a civil suit brought against her by Cogdill. Further, Hewitt contends that Garrison failed to investigate or consider whether her actions were exempt from the definition of harassment and stalking because they were undertaken by a licensed private investigator in a civil suit.

Hewitt provides no evidence that Garrison maliciously sought to prosecute her by knowingly providing false information to secure the warrant. Instead she merely questions whether Garrison should have considered the civil action and determined that Hewitt's actions were exempt from the harassment and stalking statute. A civil action does not insulate a person from committing harassment. Further, there is no evidence that the private investigator was the

---

[2] Hewitt argues that Garrison did not rely upon Price or Behery's affidavits when he sought the arrest warrant. During Hewitt's June 25, 2013 deposition, there was some confusion as to what statements Garrison relied upon in seeking the warrant, and defense counsel stated that affidavits from Barbara Cromer, Price, and Behery were not relied upon by Garrison when he sought the arrest warrant. However, in his affidavit executed after the deposition on August 1, 2013, Garrison states he did rely upon the affidavits of Price and Behery. Without the benefit of Garrison's affidavit or presence at the deposition, it appears counsel was mistaken.

person disseminating the information.

Considering the totality of the circumstances known to Garrison at the time of Hewitt's arrest, the court concludes that Garrison had the requisite probable cause to seek arrest and search warrants.³ Although the existence of probable cause is generally a question of fact, in this case, the evidence supports only the conclusion that Garrison ad probable cause to arrest Hewitt, and therefore, summary judgment is appropriate. *See Harkness v. City of Anderson,* C/A No. 8:05-1019-HMH, 2005 WL 2777574, at *3 (D.S.C. Oct.25, 2005) (concluding that the evidence supported only the conclusion that the defendants had probable cause to make the arrest, thus denying the plaintiff's false arrest claim even though the existence of probable cause is generally a question of fact).

## B. Qualified Immunity

The doctrine of qualified immunity protects government officials from civil damage actions to the extent that the officials do not violate clearly established constitutional rights. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Officials have qualified immunity either if the facts do not make out a violation of a constitutional right or if the right was not clearly established at the time. As an additional ground for dismissal, Garrison contends he is entitled to qualified immunity as his conduct did not violate any of Hewitt's constitutional rights.

Law enforcement officers enjoy the protection of qualified immunity from suits under § 1983 "as long as their actions could reasonably have been thought consistent with the rights they

---

³The court notes that in the Supplemental Report (ECF No. 36-1), Garrison noted that he had spoken with Howard Steinberg in the Solicitor's office and Steinberg advised that there was probable cause for the charge of harassment. The opinion of a prosecuting attorney prior to obtaining a warrant that probable cause existed is some evidence to establish probable cause. *See Melton v. Williams,* 314 S.E.2d 612, 615 (S.C. Ct.App.1984) ("Good faith reliance upon advice of fully informed counsel may establish probable cause.").

9

are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). The application of qualified immunity is appropriate "if a reasonable officer possessing the same information could have believed that his conduct [in seeking a warrant for the arrest of an individual] was lawful." *Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir.1991).

Having found that the plaintiff has not raised a viable § 1983 claim, the court need not determine whether any rights the plaintiff has asserted were "clearly established" for purposes of qualified immunity. *See DiMeglio v. Haines*, 45 F.3d 790, 799 (4th Cir.1995) ("In many cases where a defendant has asserted qualified immunity, dismissal or even an award of summary judgment may be obviously warranted, based upon existing law, without the court ever ruling on the qualified immunity question.").

### C. Common Law Claim of Malicious Prosecution and SCTCA

While the court has discussed Hewitt's claims above as constitutional claims pursued under § 1983, Hewitt also contends that she is bringing a common law claim of malicious prosecution in her second cause of action. The parties argue over whether the SCTCA applies to Hewitt's malicious prosecution claim. The court notes that Hewitt specifically states that she is bringing a common law malicious prosecution claim and claims alleging violations of §1983.[4] (ECF No. 33 at 10). For the following reasons, Garrison is entitled to summary judgment on Hewitt's common law malicious prosecution claim.

Under South Carolina law, the SCTCA is the exclusive remedy for any tort committed by

---

[4]The court notes that § 1983 " 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (*quoting Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). Section 1983 provides a remedy where a person acting under color of state law deprives someone of a right secured by federal law. To state a claim under § 1983, a plaintiff must allege that: 1) a right secured by the Constitution or laws of the United States was violated, and 2) the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

a state or local governmental entity, its employees, or its agents. *See Flateau v. Harrelson*, 584 S.E.2d 413, 416 (S.C. Ct.App. 2003). The SCTCA provides that a government employee who commits a tort while acting within the scope of his official duty is not personally liable unless the conduct was "not within the scope of his official duties or it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude." S.C. Code Ann. § 15-78-70(b). When asserting claims that fall within the provisions of this Act, a plaintiff must sue the governmental entity, not the individual employee. *See Flauteu,* 584 S.E.2d at 417.

The SCTCA provides that any action brought pursuant to the SCTCA "is forever barred unless an action is commenced within two years after the date of the loss was or should have been discovered." S.C. Code Ann. § 15-78-110. In South Carolina, the statute of limitations is generally three years for claims arising after April 5, 1988. *See* S.C. Code Ann. § 15-3-530. However, a cause of action which is subject to the SCTCA must be filed within two years after the date the loss was or should have been discovered, where a verified claim was not filed within one year of the alleged incident. *See* S.C. Code Ann. § 15-78-110.

Hewitt's claims arose on the date she was arrested, October 5, 2009. *See Wallace v. Kato*, 549 U.S. 384, 397 (2007) (holding "that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."). Hewitt filed this action on October 2, 2012. Thus, under the SCTCA two-year statute of limitations, Hewitt filed her claim after the two-year limitation period expired. Accordingly,

Hewitt's state law claim against Garrison is barred by the SCTCA as untimely.

Further, even if not untimely, the claim is still barred by the SCTCA as the record does not contain any evidence on which a jury could reasonably find that Garrison acted outside the scope of his official duty or that his actions constituted actual fraud, actual malice, intent to harm,

11

or a crime involving moral turpitude. Therefore, Garrison is entitled to summary judgment as to Hewitt's state law claim asserted against him in his individual capacity.

Notwithstanding the foregoing, in South Carolina:

> to maintain an action for malicious prosecution, a plaintiff must establish: (1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting such proceedings; (5) lack of probable cause; and (6) resulting injury or damage.

*Parrott v. Plowden Motor Co.*, 143 S.E.2d 607, 608 (S.C. 1965). "An action for malicious prosecution fails if the plaintiff cannot prove each of the required elements by a preponderance of the evidence, including malice and lack of probable cause." *Law v. South Carolina Dep't of Corr.*, 629 S.E.2d 642, 648 (S.C. 2006), (*citing Parrott,* 143 S.E.2d at 609). Since Hewitt must prove lack of probable cause for a state law claim for malicious prosecution, any state law claim being asserted also fails on that basis as discussed above. *McKee v. Taylor*, C/A No. 06-216, 2007 WL 1174179 at * 5 (D.S.C. April 18, 2007) (*citing Law*, 629 S.E.2d at 651)).

## IV. Conclusion

Accordingly, based on the foregoing, Defendant Garrison's Summary Judgment Motion (ECF No. 27) is **GRANTED**.

**IT IS SO ORDERED.**

s/Timothy M. Cain<br>
United States District Judge

Anderson, South Carolina
December 17, 2013